The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on November 12, 2014, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: November 12, 2014**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 12-18215 |
| | ) | |
| SARA ALEXANDER AND JASON PAYTON, | ) ) ) | Chapter 7 |
| | ) | Judge Arthur I. Harris |
| Debtors. | | |

MEMORANDUM OF OPINION[1]

Before the Court is the debtors' motion for an order requiring their former attorney, Irving S. Bergrin, to return the $1,000 they paid him. For the reasons that follow, the Court grants the debtors' motion in part. Attorney Bergrin is ordered to return $500 of the $1,000 fee to the debtors within 30 days of the date of this order.

---

[1] This opinion is not intended for official publication.

## JURISDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. § 1334 and Local General Rule 2012-7, entered on April 4, 2012, by the United States District Court for the Northern District of Ohio. This matter is a proceeding for which the Court has authority to enter a final judgment.

## FACTUAL AND PROCEDURAL HISTORY

The debtors filed their Chapter 7 bankruptcy petition on November 8, 2012, represented by their prior attorney, Wilhelmina Huff. On January 9, 2013, the Chapter 7 trustee filed a motion to compel the debtors to turn over property of the estate: namely, a 2003 Cadillac Escalade, which was valued between $6,750 and $7,475. The trustee also objected to the debtors' claimed exemption in the Cadillac Escalade.

On March 4, 2013, the debtors moved to convert their Chapter 7 case to Chapter 13. The trustee objected to the debtor's motion, asserting that the debtors were primarily seeking to convert in order to retain the Cadillac Escalade and 2012 tax refunds. On April 16, 2013, the Court granted the trustee's motion for turnover of the Cadillac Escalade. The Court also granted the debtor's motion to convert to Chapter 13, but required that the debtors (1) provide continued proof of insurance on any vehicles to the Chapter 13 trustee, (2) name the Chapter 13

2

trustee as the loss payee of the vehicle insurance policy, and (3) turn over a portion of their 2012 state and federal tax refunds to the Chapter 13 trustee.

On May 28, 2013, the Chapter 13 trustee filed a motion to reconvert the debtors' Chapter 13 case to Chapter 7. On May 30, 2013, the trustee objected to confirmation of the debtors' Chapter 13 plan on the ground that the debtors had failed to comply with the Court's order requiring debtors to turn over a pro rata share of the 2012 tax refund, maintain vehicle insurance, and name the trustee as loss payee of the insurance policy. On July 2, 2013, the Court granted the trustee's motion to reconvert the debtors' case. Accordingly, the Court's order for the debtors to turn over the Cadillac Escalade to the trustee became effective when the debtors' case was reconverted to Chapter 7.

Despite the Court's order for turnover of the Escalade, the debtors refused to relinquish the vehicle, and also failed to attend a Rule 2004(a) examination that had been scheduled by court order for August 14, 2013. On August 8, 2013, the Chapter 7 trustee commenced an adversary proceeding against the debtors (*Stein v. Alexander, et al.*, Adv. Pro. No. 13-01188), seeking an order denying the debtors' discharge under 11 U.S.C. § 727. The trustee's complaint alleged that the debtors had refused to turn over the Cadillac Escalade and 2012 tax refund as required by court order, had failed to keep the vehicle insured, and had failed to

3

name the trustee as the loss payee of the debtors' insurance policy on the vehicle. An entry of default was entered in the adversary proceeding against the debtors, and the Court granted the trustee's motion for default judgment, denying the debtors' discharge on November 12, 2013.

In early 2014, the debtors began looking for a new bankruptcy attorney in the hope of obtaining relief from the default judgment denying their discharge. The debtors contacted attorney Bergrin, and on February 3, 2014, the debtors paid $100.00 for attorney Bergrin to review their bankruptcy case docket in order to determine whether there was a basis for having the debtors' discharge reinstated. *See* Bankr. ECF No. 138. On February 15, 2014, the debtors paid attorney Bergrin an additional $900.00 to prepare and file a motion for relief from default judgment. *See id*.

On February 12, 2014, the debtors' then attorney of record, Wilhelmina Huff, filed a motion to withdraw, stating that, "the Debtors have made it impossible for Counsel to adequately continue representation on their behalf." Bankr. ECF No. 105. In an email dated February 27, 2014, the debtors notified attorney Huff that they had decided to hire attorney Bergrin to represent them "due to the complexity of issues involving this case." Bankr. ECF No. 107-2. At a hearing held on March 11, 2014, the Court and the debtors agreed that attorney

4

Bergrin would replace attorney Huff as the debtors' attorney, and the Court issued an order to that effect on March 12, 2014.

On March 12, 2014, attorney Bergrin filed a motion for relief from judgment on behalf of the debtors. Shortly thereafter, attorney Bergrin began negotiations with the Chapter 7 trustee and attorney Huff's malpractice insurance carrier on a proposed settlement that would permit the debtors to receive their discharge. Bankr. ECF No. 117-1, Exhibits O, P. On April 17, 2014, attorney Bergrin forwarded an email to the debtors that laid out the proposed settlement with the Chapter 7 trustee and attorney Huff's insurance carrier. The proposed settlement would have allowed the debtors to receive a discharge and keep the Cadillac Escalade and their 2012 tax refund. Bankr. ECF No. 117-1, Exhibit R.

However, the debtors expressed dissatisfaction with the proposed settlement negotiated by attorney Bergrin. When informed of the terms, the debtors stated that they would only agree to the settlement if "our exemptions are in place," asserting that the "estate is only entitled to $6,039.00" (Bankr. ECF No. 117-1, Exhibit R). Attorney Bergrin responded that he would not change his position on the issue of exemptions, and that the debtors should find another attorney if the proposed settlement was not acceptable to them (Bankr. ECF No. 117-1, Ex. R, U). Attorney Bergrin explained to the debtors that "by keeping your assets,

5

you are getting the benefit of your exemptions," and that "the BEST you can do is to get your discharge and keep all your assets – that's where we are now." Bankr. ECF No. 117-1, Exhibit V.  Nevertheless, the debtors remained steadfast in their rejection of the proposed settlement.

On June 4, 2014, attorney Bergrin moved to withdraw as debtors' attorney due to the debtors allegedly "making demands which counsel [attorney Bergrin] feels are not well grounded in bankruptcy law, creating a fundamental disagreement between the parties."  Bankr. ECF No. 113.  Attorney Bergrin sent a detailed email to the debtors on June 4, 2014, explaining his reasons for moving to withdraw from the representation.  Bankr. ECF No. 117-1, Exhibit Y.  Stating that he and the debtors had reached an impasse on the issue of exemptions, attorney Bergrin informed the debtors that he had no choice but to withdraw because he could not "advocate a position in court which has no legal foundation." *Id*.

On July 1, 2014, the debtors filed an objection to attorney Bergrin's motion to withdraw.  Expressing their dissatisfaction with attorney Bergrin's services, the debtors asserted that attorney Bergrin had failed to show up for the February 25th hearing, that he had "begun [settlement] negotiations without our knowledge, consent, or advisement," and that he hid the settlement negotiations from them. *Id*.  The debtors alleged that attorney Bergrin's representation had resulted in

6

"tremendous strife" and that they felt abandoned by their own attorney. *Id*.

The Court held a hearing on attorney Bergrin's motion to withdraw on July 8, 2014. At the hearing, the debtors stated that attorney Bergrin did not "want to handle the case as we see fit." The Court granted attorney Bergrin's motion to withdraw due to a fundamental disagreement between the debtors and attorney Bergrin under Ohio Rule of Professional Conduct 1.16(b).

On July 31, 2014, the Chapter 7 trustee filed a motion to compromise and settle a disputed claim with attorney Huff's insurance carrier. The insurance carrier of attorney Huff (Professional Solutions Insurance Company) offered to settle all disputes with the trustee regarding attorney Huff by paying $14,293 to the trustee (the "Settlement Fund"). *Id*. The proposed settlement also provided that the order denying the debtors' discharge be vacated, and a discharge be issued to the debtors. The settlement further provided for the trustee to release any and all prepetition claims against attorney Huff, and assign to Professional Solutions Insurance Company all postpetition claims against the debtors for failing to turn over the Escalade and the 2012 tax refund. This proposed compromise was a modified version of the proposed settlement that attorney Bergrin had negotiated, but which did not require the consent of the debtors. On September 23, 2014, the Court granted the trustee's motion to compromise.

7

On July 31, 2014, the debtors filed a motion for an order that attorney Bergrin return the $1,000 in attorney's fees that they had paid him. In their motion, the debtors set forth their frustration with attorney Bergrin's services and alleged that attorney Bergrin's "breach of fiduciary duty requires him to forfeit his attorney fee." *Id*. Attorney Bergrin responded to the debtors' motion for forfeiture on August 26, 2014, asserting that the $1,000 fee he received was reasonable in light of the services rendered, "even though the record in this case reflects considerable time spent in this matter." Bankr. ECF No. 133. Attorney Bergrin stated that he generally charges $250.00 per hour for his legal services, and that the time he devoted to the debtors' bankruptcy case far exceeded four hours of work. *Id*. Attorney Bergrin added that he had negotiated a favorable settlement for the debtors, which was "summarily rejected." *Id*.

The Court held a hearing on the debtor's motion on September 23, 2014. During the hearing, attorney Bergrin conceded that he had not executed any written fee agreement with the debtors, and therefore was unable to comply with the requirements of 11 U.S.C. § 329 and Federal Rule of Bankruptcy Procedure 2016(b). However, attorney Bergrin later submitted a fee disclosure statement pursuant to § 329 and Rule 2016(b) on September 29, 2014. On October 1, 2014, attorney Bergrin submitted a supplemental response to the debtors' motion,

asserting that, under a literal reading of § 329, he was not required to file a fee disclosure since the compensation was paid to him well after one year before the petition date. He further argued that "the only remedy available to the debtors is whether the compensation exceeds the reasonable value of such service as set forth in § 329(b)."

DISCUSSION

Under several sections of the Bankruptcy Code, bankruptcy courts are required to evaluate the reasonableness of attorney's fees. Section 329 of the Code dictates that bankruptcy courts must evaluate the reasonableness of the fee agreement between the debtor and his or her attorney. *See Rittenhouse v. Eisen*, 404 F.3d 395, 397 (6th Cir. 2005). Additionally, professionals employed under Section 327 (including lawyers) "may receive only 'reasonable compensation' " under Section 330 of the Code. *United States v. Schilling* (*In re Big Rivers Elec. Corp.*), 355 F.3d 415, 532 (6th Cir. 2004). Section 502(b)(4) also limits an attorney's fees to the reasonable value of the services provided by the attorney. *See Peale v. Miller*, No. 95-5681, 1996 U.S. App. LEXIS 31260 (6th Cir. 1996).

A bankruptcy court's authority to review attorney's fees for reasonableness is broad, extending to the authority to deny fees in their entirety or to disgorge prepetition retainers for failure to observe the requirements of the statute.

9

"[B]ankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules." *In re Kisseberth*, 273 F.3d 714, 721 (6th Cir. 2001); *In re Robinson*, 189 F. App'x 371, 373 (6th Cir. 2006); *In re Dyer*, 489 B.R. 637, at *7 (B.A.P. 6th Cir. 2013) (table opinion). This Court has ordered a partial disgorgement of attorney's fees under the Court's broad authority to review such fees for reasonableness under § 329. *See In re Quarm, In re Young*, Case Nos. 09-20498, 10-11404 (Bankr. N.D. Ohio Mar. 24, 2011) (unpublished).

In addition to requiring that attorney's fees be reasonable, the Code also dictates that an attorney must execute a written fee agreement with most consumer debtors – *i.e.*, "assisted person[s]" as defined in 11 U.S.C. § 101(3). Section 528 of the Code, which sets forth requirements for debt relief agencies, provides in pertinent part:

> A debt relief agency shall—
> (1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously—
> (A) the services such agency will provide to such assisted person; and
> (B) the fees or charges for such services, and the terms of payment;
> (2) provide the assisted person with a copy of the fully

> executed and completed contract[.]

11 U.S.C. § 528(a). In *Milavetz, Gallop & Milavetz, P.A. v. United States*, the Supreme Court held that attorneys who provide bankruptcy assistance to debtors (*i.e.*, providing advice, counsel, or document preparation) are considered "debt relief agencies" under the Code. 559 U.S. 229, 236 (2010). The requirements of § 528, therefore, apply to attorneys who provide bankruptcy assistance to consumer debtors. "Bankruptcy assistance" includes numerous services routinely undertaken by attorneys. Section 101(4A) of the Code defines "bankruptcy assistance" as:

> Any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

An attorney who fails to materially comply with § 528 is subject to § 526(c)(1), which states:

> Any contract for bankruptcy assistance between a debt relief agency and an assisted person that does not comply with the material requirements of this section, section 527, or section 528 shall be void and may not be enforced by any Federal or State court or by any other person, other than such assisted person.

Thus, any oral fee agreement for bankruptcy assistance governed by § 528 is

11

arguably voided by § 526(c)(1). *See* Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4th Edition, § 366.1, at ¶ 47. Courts have interpreted § 526(c)(1) as prohibiting an attorney from obtaining a court order requiring the debtor to pay attorney's fees still due and owing, when that attorney has failed to comply with §§ 526, 527, or 528. *See In re Gutierrez*, 356 B.R. 496, 505 (Bankr. N.D. Cal. 2006). On the other hand, an attorney's failure to provide a timely written fee agreement does not necessarily mean that all fees must be disgorged. *See id*. ("The Court does not read 11 U.S.C. § 526(c)(1) as requiring reimbursement of attorney's fees already paid[.]")

In addition to the written fee requirement of § 528, the Ohio Rules of Professional Conduct indicate a strong preference for the existence of a written fee arrangement between attorneys and their clients. Rule 1.5 of the Ohio Rules, made applicable to this proceeding by virtue of N.D. Ohio Local Bankruptcy Rule 2090-2(a) and N.D. Ohio Local Civil Rule 83.7, provides in pertinent part:

> (b) The nature and scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in *writing*, before or within a *reasonable* time after commencing the representation unless the lawyer will charge a client whom the lawyer has regularly represented on the same basis as previously charged. (emphasis in original).

Although the debtors and attorney Bergrin dispute the exact date on which

12

attorney Bergrin was retained to represent the debtors, both agree that attorney Bergrin entered into an attorney-client relationship with the debtors in February 2014. The parties verbally agreed to a $1,000 flat fee, and the debtors provided attorney Bergrin with the $1,000 fee without any written agreement.

While attorney Bergrin's representation of the debtors was unusual in that he was not retained to file a new bankruptcy case, the Court nevertheless holds that the written contract requirements of § 528(a)(1) are applicable, other than the requirement that the contract be executed before the debtors' bankruptcy petition is filed. The language of § 528 is ambiguous as to whether it applies to attorneys who first represent an assisted person after a debtor's case has been filed; however, the Court believes that the better reading of the statute is to apply the written contract requirements to such situations, other than the requirement that the contract be executed before the debtors' bankruptcy petition is filed. Certainly, the same policy reasons for requiring written contracts when attorneys represent assisted persons will apply no matter when an attorney first comes to represent a debtor. In the present case, the debtors hired attorney Bergrin to represent them in their pending bankruptcy case so that they might obtain the discharge which had previously been denied them. Attorney Bergrin, however, failed to meet the requirements of § 528 because he failed to execute a written

13

contract with the debtors that explained the services he was to provide and the fees for such services.

Under § 329(b) of the Code, the Court examines attorney Bergrin's $1,000 fee for reasonableness in light of the services that he rendered on behalf of the debtors. Attorney Bergrin reviewed the debtors' bankruptcy case docket, prepared and filed a motion for relief from default judgment, and negotiated a proposed settlement agreement with attorney Huff's insurance carrier and the Chapter 7 trustee, which the debtors ultimately rejected. No matter how unrealistic the debtors' expectations may have been and no matter how ill-advised their choice, the decision to accept or reject a settlement negotiated on their behalf by their attorney remained their decision as clients. *See* Ohio R. Prof. Conduct 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter.") Their attorney must respect that decision, although Ohio law permits an attorney to withdraw when, among other reasons, "the client insists upon taking action . . . with which the lawyer has a fundamental disagreement." *See* Ohio R. Prof. Conduct 1.16(b)(4).

In this case, the Court previously ruled that attorney Bergrin's withdrawal from representation was appropriate based on a fundamental disagreement. However, one of the resulting problems was what to do with the oral agreement

between the debtors and attorney Bergrin to pay $1,000 in exchange for legal representation in an effort to have the order denying the debtors' discharge vacated. Had the agreement been in writing, the agreement might have explained that the $1,000 fee would be owed regardless whether the legal representation ultimately proved successful. Or, the agreement might have provided that the fee would be refunded if the discharge was not vacated or if the debtors were not fully satisfied with the results.

In any event, given the requirement of a written fee agreement under 11 U.S.C. § 528(a)(1) and the strong preference for a written agreement under Ohio Rule of Professional Conduct 1.5, attorney Bergrin bears responsibility for the absence of a written agreement that might have clarified the expectations of the legal representation and, in particular, might have explained what would happen to the $1,000 that was paid if attorney Bergrin was permitted to withdraw due to a fundamental disagreement. Based upon the circumstances previously mentioned, as well as: (1) the lack of a written fee agreement despite attorney Bergrin's knowledge of the debtors' difficulties surrounding their previous attorney in the same case, (2) the debtors being left unrepresented in their bankruptcy case, with their discharge denied and a trustee still seeking turnover of their vehicle and 2012 tax refunds, (3) the negotiation of a potential settlement that

was very favorable to the debtors although rejected by them, (4) legal services that were easily worth more than $1,000 under a lodestar analysis, and (5) the debtors benefitting from what essentially was a modified version of the settlement negotiated by attorney Bergrin, the Court finds that it is appropriate under 11 U.S.C. § 329(b) for attorney Bergrin to return to the debtors $500 of the $1,000 that the debtors paid for his legal services.

## CONCLUSION

For the reasons stated in this memorandum of opinion, the Court grants the debtors' motion in part. Attorney Bergrin is ordered to return $500 of the $1,000 fee to the debtors within 30 days of the date of this order.

IT IS SO ORDERED.